UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNUM LIFE INSURANCE COMPANY of
AMERICA, a Maine Corporation,

       Plaintiff,

  v.

LARRY PAINTER, an individual;
LEONARD ERMATINGER, an
individual; and RYAN PAINTER,
an individual,

       Defendants.

NO. CIV. S-09-732 FCD/EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on the motions of defendants/cross-defendants LARRY PAINTER and RYAN PAINTER ("the Painters") to dismiss a cross-claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and to strike a portion of the cross-claimant's answer pursuant to FRCP 12(f)(2).  Leonard Ermatinger, the defendant/cross-claimant, opposes the Painters' motions.  For the reasons set forth below, the Painters' motions are DENIED.

**BACKGROUND**

Plaintiff UNUM Life Insurance Company of America ("UNUM") instituted this interpleader action concerning the group life insurance proceeds of the deceased, Jacqueline Painter ("Jacqueline"). (Compl., filed March 17, 2009.) The complaint names as defendants Ermatinger and the Painters. (Id.) Ermatinger, the decedent's father, alleges that he is the sole heir of Jacqueline's estate. (Ermatinger Answer & Cross-cl. ("Cross-cl."), filed July 8, 2009, at 4.) The complaint identifies Larry Painter as the primary beneficiary of Jacqueline's policy and Ryan Painter as the contingent beneficiary. (Compl. ¶ 10.)

Larry Painter married Jacqueline on December 30, 1983. (Cross-cl. at 4.) Ryan Painter is Larry Painter's son and was Jacqueline's step-son. (Id.) Larry Painter filed for dissolution of marriage in 1994. (Id.)

In 1995, Jacqueline began working for Con-Way Transportation ("Con-Way"). (Id.) She was insured under an UNUM group life insurance policy ("Policy") issued to Con-Way. (Compl. ¶ 9.) On September 18, 1995, she designated Larry Painter as the primary beneficiary of the Policy and Ryan Painter as the contingent beneficiary of the Policy. (Id. at ¶ 10.)

Ermatinger alleges that Larry Painter and Jacqueline entered into a Marital Settlement Agreement ("Agreement") on April 29, 1996 and May 1, 1996, which was incorporated into a Judgement of Dissolution on July 3, 1996 by the Superior Court of Sacramento. (Cross-cl. at 4-5.) In the Agreement, Ermatinger alleges that the parties "waive[d] and renounce[d] any and all rights to

inherit the estate of the other at the other's death." (Id. at 5.) The purpose of the Agreement was to "resolve all property and other rights of each party against the person or property of the other in all respects." (Id.) The Agreement, Ermatinger asserts, is binding on the "respective legatees, devisees, heirs, executors, administrators, assignees and successors in interest of the parties." (Id. at 6.)

Jacqueline died intestate on February 16, 2008. (Cross-cl. at 6.) Con-Way allegedly notified UNUM of Jacqueline's passing and identified Larry Painter as the primary beneficiary of the Policy and Ryan Painter as the contingent beneficiary of the Policy. (Compl. ¶ 13.) UNUM instituted this interpleader action after Ermatinger's attorney notified UNUM that Ermatinger would contest the Painters' designations as the beneficiaries of the Policy. (Id. at ¶¶ 16, 20.)

Ermatinger claims that the Agreement and Judgment of Dissolution constitute a waiver of Larry Painter's rights to the life insurance proceeds that is also binding on Ryan Painter. (Cross-Cl. at 6.) Ermatinger seeks declaratory relief, finding him the sole owner of the life insurance proceeds based on his status as Jacqueline's only heir. (Id. at 7.) Ermatinger also seeks attorney fees and costs in addition to sanctions against the Painters and their counsel of record for "pursuing bad faith claims and frivolous litigation." (Id.)

The Painters now move to dismiss Ermatinger's cross-claim on the following grounds: (1) California law, specifically Section 5000 of the California Probate Code, excludes insurance proceeds from a decedent's estate; (2) the Agreement does not incorporate

3

any reference to life insurance policies; and (3) the cross-claim against Ryan Painter fails because Ryan Painter was not a party to the Agreement and thus could not have waived his interest as a contingent beneficiary of the Policy. (Painters' Mem. Mot. Dismiss ("Painters' Mem"), filed July 27, 2009, at 3-4.)

The Painters also move to strike Ermatinger's denial "that Larry Painter or Ryan Painter have any right to said insurance proceeds" from paragraph 10 of Ermatinger's answer on the ground that Ermatinger has not stated a sufficient defense to UNUM's allegation that Jacqueline designated the Painters as beneficiaries of the Policy. (Painters' Mem. at 6.)

**STANDARDS**

**1.  Motion To Dismiss For Failure To State A Claim**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United

1  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
2  Cir. 1986).  Indeed, "[t]hreadbare recitals of the elements of a
3  cause of action, supported by mere conclusory statements, do not
4  suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
5  (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
6  (2007)).

7      In ruling upon a motion to dismiss, the court may consider
8  only the complaint, any exhibits thereto, and matters which may
9  be judicially noticed pursuant to Federal Rule of Evidence 201.
10 See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th
11 Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United
12 States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

13     Ultimately, the court may not dismiss a complaint in which
14 the plaintiff alleged enough facts to "state a claim to relief
15 that is plausible on its face."  Iqbal, 129 S. Ct. at 1949
16 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
17 (2007)).  Only where a plaintiff has failed to "nudge [his or
18 her] claims across the line from conceivable to plausible," is
19 the complaint properly dismissed.  Id. at 1952.  When there are
20 well-pleaded factual allegations, "a court should assume their
21 veracity and then determine whether they plausibly give rise to
22 an entitlement to relief."  Id. at 1950.

23 **2.   Motion To Strike For Alleging An Insufficient Defense**

24     FRCP 12(f)(2) authorizes the court, by motion of a party or
25 by its own initiative, to "strike from a pleading an insufficient
26 defense."  The function of a 12(f) motion is to avoid the time
27 and expense of litigating spurious issues by dispensing with
28 those issues prior to trial.  Fantasy, Inc. v. Fogerty, 984 F.2d

5

1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted, because they are often used to delay, and because of the limited importance of the pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). A motion to strike should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the litigation." Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996) (citing Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

**ANALYSIS**

**1.   Motion To Dismiss**

The determinative issue on this motion is whether the Painters via the Agreement waived their expectancy interests as beneficiaries of the Policy.

The Painters rely on Section 5000 of the California Probate Code to argue that life insurance policies are not part of a decedent's estate.[1] (Painters' Mem. at 3-4.) Their argument is unpersuasive. Section 5000 simply recognizes the validity of nonprobate transfers upon death provided in insurance policies

---

[1] The Painters also cite to Section 5600 to argue that Jacqueline's insurance policy was specifically excluded from nonprobate transfers that fail as a result of a dissolution of marriage. (Painters' Mem. at 4.) Section 5600 is inapplicable to a dissolution of marriage that occurred before January 1, 2002. Cal. Prob. Code § 5604. The applicable law in effect before January 1, 2002, controls the issue of nonprobate transfers. Id. For this reason, this court does not address the Painters' argument relating to Section 5600.

6

and excludes them from probate.  See Cal. Prob. Code § 5000; Estate of Petersen, 28 Cal. App. 4th 1742, 1746 (1994).  As the Law Revision Comment to Section 5000 explains, the purpose of Section 5000 is to relieve the relevant parties from complying with the formalities of a will.  Cal. Prob. Code § 5000.

The exclusion of an asset from probate does not automatically remove an asset from a decedent's estate.  The Law Revision Comment to Section 6600, which defines a decedent's estate to mean all personal and real property, states that a decedent's estate is "not limited to probate assets."  Cal. Prob. Code § 6600.  Moreover, California courts have recognized that a beneficiary's expectancy interest in a life insurance policy[2] is an interest that can be waived through a marriage settlement agreement such that the proceeds later become part of the decedent's estate.  See Life Insurance Co. of N. Am. v. Cassidy, 35 Cal. 3d 599 (1984); Thorp v. Randazzo, 41 Cal. 2d 770 (1953); Estate of Petersen, 28 Cal. App. 4th at 1753 (explaining that an asset for nonprobate transfer is community property and remains part of the community estate subject to division of property at the dissolution of marriage).  Therefore, the Painters cannot assert that California law excludes, as a matter of law, insurance proceeds from the waivers in the Agreement or from Jacqueline's estate.

---

[2] The Painters refer to their interests in the Policy as "contractual benefits." (Painters' Mem. at 4.)  This is inaccurate.  A designated beneficiary of a life insurance policy has an expectancy interest in a gift that vests at the time of the insured's death.  See Cassidy, 35 Cal. 3d at 606.  When an insurance policy is purchased with community property funds, the resulting policy is an asset of the community subject to division during a dissolution.  Id. at 605.

7

Contrary to the Painters' assertions, the omission of any reference to life insurance policies in the Agreement is not fatal to Ermatinger's claim at this stage in the action, where the court must construe the facts stated in the cross-claim as true. A marriage settlement agreement is construed under the rules governing the interpretation of contracts. See In re Marriage of Egedi, 88 Cal. App. 4th 17, 22 (2001); In re Marriage of Iberti, 55 Cal. App. 4th 1434, 1439 (1997). When interpreting the provisions of a marital settlement agreement, California courts have considered the parties' mutual intent at the time the agreement was formed. See e.g., Cassidy, 35 Cal. 3d at 604-05, 608-09; Thorp v. Randazzo, 41 Cal. 2d at 773-75; Tanner v. Tanner, 57 Cal. App. 4th 419, 425 (1997). Where possible, courts infer the intent solely from the language of the agreement. See id.; see also Life Ins. Co. of N. Am. v. Ortiz, 535 F.3d 990, 993 (9th Cir. 2008).

While courts usually do not construe general language in a marital settlement agreement to include a waiver of a beneficiary's interest in life insurance proceeds, the use of general language does not foreclose the possibility that the parties intended to waive expectancies that may have existed at the time of the settlement. See Cassidy, 35 Cal. 3d at 604-05 (holding that general waiver of rights to "act as an administrator of the other spouse's estate, to seek a homestead, to inherit or receive a family allowance and to take under a will executed prior to the date of the settlement agreement" and "to receive in any manner any property of the other upon the death of the other" was clear indication that the beneficiary intended to

waive all rights, including the interest as a beneficiary of an insurance policy). In a marriage settlement agreement, a broad waiver of "all rights" or language stating the equivalent, as the Agreement in this case allegedly contains, can suffice as a waiver of the party's interest in a property subject to a nonprobate transfer. See Cal. Prob. Code § 145.

However, here, the parties dispute whether the Agreement constitutes a waiver of the Painters' interests. To resolve this issue, the court must interpret the Agreement in its totality in order to discern the intentions of Jacqueline and Larry Painter at the time they entered the Agreement. See Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"). Based on the pleadings and nothing more, the court cannot dismiss Ermatinger's cross-claim against Larry Painter. The court must assume the truth of his allegation--that Larry Painter waived his interest in the policy via the Agreement--and the court cannot resolve the parties' factual dispute on this issue at this stage in the proceedings. See Cruz, 405 U.S. at 322 ("the allegations of the complaint must be accepted as true").

The Painters also argue that Ryan Painter could not have waived his interest as a contingent beneficiary to the Policy because he was not a party to the Agreement. (Painters' Mem. at 5.) This issue also cannot be disposed of at the pleading stage. Assuming the veracity of Ermatinger's allegation that the Agreement was a complete waiver of all rights that was also binding on Ryan Painter, Ermatinger's claim plausibly gives rise

9

to an entitlement of relief.  See Iqbal, 129 S. Ct. at 1950.  The rights of the parties in a nonprobate transfer of community property are still subject to "the terms of the instrument under which the nonprobate transfer is made" or "a written expression of intent of a party in the provision for transfer of the property or in a written consent to the provision."  Cal. Prob. Code § 5011.  Courts addressing the specific issue of whether the interest of a contingent beneficiary survives a marital settlement agreement also have considered the intent of the parties and looked at the individual factual circumstances.  See Baekgaard v. Carreiro, 237 F.2d 459, 465 (9th Cir. 1956) (inferring intent from the language of the policy); Prudential Ins. Co. v. Broadhurst, 157 Cal. App. 2d 375, 378 (1958) (determining the issue to be a question of fact).[3]  Therefore, this court also cannot determine the nature of Ryan Painter's interest as a contingent beneficiary to the Policy by referring only to the pleadings.

Ermatinger's allegation that the Painters waived their interests through the Agreement is a "plausible" claim under California law.  The court cannot dismiss a complaint in which plaintiff has alleged sufficient facts to "state a claim to relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949.  Accordingly, the Painters' motion to dismiss the cross-claim for failure to state a cognizable claim is DENIED.

---

[3] The case that Ermatinger relies upon to argue that the waiver provision is binding on Ryan Painter, Estate of Jones, 122 Cal. App. 4th 326 (2004), is distinguishable from the case at bar because Estate of Jones concerns a testamentary transfer and not a nonprobate transfer.

**2.   Motion To Strike**

The Painters also bring a motion to strike Ermatinger's denial "that Larry Painter or Ryan Painter have any right to said insurance proceeds" from Paragraph 10 of Ermatinger's answer to the interpleader complaint. (Painters' Mem. at 6.)  Whether the Painters' interests in the insurance proceeds survived the marriage settlement agreement is the central issue in this matter.  It is not a "spurious" issue, and the court, as explained above, cannot decide this matter solely on the pleadings.  Accordingly, the Painters' motion to strike is DENIED.

**3.   Request For Attorney's Fees And Sanctions**

Ermatinger requests that the court sanction the Painters and their counsel of record for "pursuing bad faith claims and frivolous litigation." (Cross-cl. at 7.)  The court must deny Ermatinger's request for sanctions for two reasons.  First, Ermatinger did not adhere to the procedural requirements laid out in FRCP 11(c)(2).[4]  Second, the court does not find the Painters' assertions "frivolous."  The word "frivolous" is used to "denote a filing that is both baseless and made without a reasonable and competent inquiry."  Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005).  Here, the parties do not dispute that Jacqueline named the Painters as beneficiaries of the Policy.  The Painters

---

[4]  "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11.

11

thus had an expectancy interest in the insurance proceeds at the time Larry Painter and Jacqueline entered the Agreement. As a marriage settlement agreement does not automatically invalidate an insurance beneficiary's expectancy interest, the Painters' assertion that their interest in the Policy's proceeds survived the Agreement is not "baseless."

Ermatinger also requests the court award him attorney fees and costs but does not cite a legal basis for such an award, and thus, his request is properly denied on that basis. (Cross-cl. at 7.) If, however, Ermatinger seeks attorney fees and costs because he alleges that the Painters are engaging in frivolous and bad faith litigation, the court denies the request for the reasons stated above.

**CONCLUSION**

For the foregoing reasons, the Painters' motions to dismiss and to strike are DENIED. Ermatinger's request for sanctions and attorney fees and costs on the basis of alleged bad faith claims and frivolous litigation is also DENIED.

IT IS SO ORDERED.

DATED: September 3, 2009.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE